WEISS & JONES, L.L.P.
Philip E. Weiss, Esq. (No. 152523)
1551 Shelter Island Drive
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801
E-Mail: shiplaw@earthlink.net

Attorneys for Plaintiff
SHELTER ISLAND YACHTWAYS, LTD.
a California Limited Partnership,
dba SHELTER ISLAND BOATYARD

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELTER ISLAND YACHTWAYS, LTD., a California Limited Partnership, dba SHELTER ISLAND BOATYARD,<br><br>Plaintiff,<br><br>v.<br><br>M/Y SUNDANCE, Official No. 521498, A HATTARAS MOTORYACHT OF APPROXIMATELY 33 FEET IN LENGTH AND 12 FEET IN BEAM, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*,<br><br>Defendant. | Case No. 07-CV 2015 DMS (WMc)<br><br>IN ADMIRALTY<br><br>POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID<br><br>F.R.C.P. Supplemental Admiralty Rule E(9); 46 U.S.C. Sections 30101-31343<br><br>SUBMITTED ON PAPERS<br>(Oral Arguments Not Requested)<br><br>Judge:      Hon. Dana M. Sabraw<br>Courtroom:  10 - 2nd Floor<br>Date:       April 25, 2008<br>Time:       1:30 a.m. |

COMES NOW Plaintiff SHELTER ISLAND YACHTWAYS, LTD., a California Limited Partnership, dba SHELTER ISLAND BOATYARD ("PLAINTIFF") and respectively submits its Memorandum of Points and Authorities in Support of its Motion for Interlocutory Vessel Sale.

///

///

## I.

## STATEMENT OF FACTS

SHELTER ISLAND YACHTWAYS, LTD., a California Limited Partnership, dba SHELTER ISLAND BOATYARD ("PLAINTIFF") operates a well known boatyard on Shelter Island, San Diego, California. The DEFENDANT VESSEL is a 1968, 33-foot Hattaras motoryacht of 19 documented gross tons, with a beam of 12.3 feet, named and known as "M/Y SUNDANCE," and currently documented with the United States Coast Guard under Official No. 521498.

On September 17, 2007 the DEFENDANT VESSEL was, without PLAINTIFF's advance notice or permission, abandoned at PLAINTIFF's boatyard. Both the DEFENDANT VESSEL and the individual believed to be her owner, Wayne Oliver, were, prior to this incident, unknown and strangers to PLAINTIFF. Declaration of Bill Roberts ("Roberts Decl.") at para. 2.

PLAINTIFF's General Partner, Mr. Bill Roberts, contacted Mr. Oliver, who claimed a tenant at Mr. Roberts' boatyard (Coleman Marine) had been hired to work on the DEFENDANT VESSEL's transom. However, PLAINTIFF contacted this tenant and was informed that not only was the tenant not retained to work on the transom, the tenant specifically instructed Mr. Oliver that he was *not* to bring the DEFENDANT VESSEL to PLAINTIFF's boatyard. Roberts Decl. at para. 3.

Soon after discovering the DEFENDANT VESSEL abandoned at its boatyard, PLAINTIFF contacted its attorney, Philip E. Weiss, and informed him of the situation and requested his assistance in resolving the problem. On September 25, 2007 Mr. Weiss mailed a letter to Mr. Oliver, addressed to the address reflected on U.S. Coast Guard records for the DEFENDANT VESSEL's owner, Mr. Oliver. Declaration of Philip E. Weiss ("Weiss Decl.") at para. 2. A true and correct copy of this letter is attached as Exhibit A to the Declaration of Philip E. Weiss, submitted concurrently herewith. This letter made demand that the DEFENDANT VESSEL be immediately removed from PLAINTIFF's boatyard, and advised Mr. Oliver that lay day charges, calculated at the boatyard's usual rates, would be imposed until the DEFENDANT VESSEL was removed, and that PLAINTIFF would seek the arrest of the trespassing

DEFENDANT VESSEL if she was not removed within five days. This letter also urged Mr. Oliver to retain the services of an experienced maritime lawyer if he refused to remove his vessel or had doubts as to PLAINTIFF's right to seek the arrest of the offending vessel.

Having received no response to his letter, PLAINTIFF's attorney contacted Mr. Oliver by telephone on October 4, 2007 to discuss the situation. Weiss Decl. at para. 3. At that time Mr. Oliver indicated he would in fact remove the DEFENDANT VESSEL the following week. Weiss Decl. at para. 3. During this conversation Mr. Oliver was informed that lay day fees were continuing to accrue at the rate of $66.00 per day (calculated at the usual rate of $2.00 per foot of boat length per day). Weiss Decl. at para. 3. He agreed he would pay the lay day charges, and also would reimburse PLAINTIFF for the attorneys' fees it incurred in connection with the instant matter. Weiss Decl. at para. 3. At this time Mr. Oliver indicated he would remove the vessel no later than the following Wednesday, October 10, 2007 and that he would pay the lay day charges and attorneys' fees on that date. Weiss Decl. at para. 3. In the interest of resolving the matter informally and avoiding an unnecessary use of the Court's valuable and limited resources, PLAINTIFF agreed to hold legal action in abeyance, to permit Mr. Oliver an opportunity to perform on his promise. He did not.

On October 10, 2007, the date by which Mr. Oliver was to have moved his vessel and paid all sums agreed due, he had neither removed the DEFENDANT VESSEL nor contacted PLAINTIFF or its attorney to explain why he had not done so, nor paid the sums agreed due. Weiss Decl. at para. 4. Accordingly, PLAINTIFF's attorney again called Mr. Oliver, to inquire as to his intentions. Weiss Decl. at para. 4. Mr. Oliver advised he had been unable to move the vessel because his car "broke down" in Oregon, where he apparently now resides. Weiss Decl. at para. 4. Asked why he did not then fly down to resolve the problem (which after all was growing larger by at least $66.00 per day), Mr. Oliver indicated he did not have the time to fly down because he had to go to a Veteran's Hospital. Weiss Decl. at para. 4. He did not explain how he would have had time to drive to San Diego from Oregon without interfering with his hospital appointment, but did not have the time to fly to San Diego. Weiss Decl. at para. 4. Mr. Oliver advised he was "working on getting the money" necessary to satisfy PLAINTIFF's claim.

1  When asked, Mr. Oliver admitted he had not made arrangements for the accommodation of the
2  DEFENDANT VESSEL once he removed it from PLAINTIFF's boatyard. Weiss Decl. at para.
3  4. When asked how long Mr. Oliver anticipated it would be before he would obtain the funds
4  necessary to resolve this matter (pay lay day fees, remove his vessel and pay, as agreed,
5  attorneys' fees), he could not or would not provide any estimate. Weiss Decl. at para. 4.
6  PLAINTIFF's counsel then informed Mr. Oliver that the DEFENDANT VESSEL was
7  continuing to interfere with boatyard operations and that if she was not removed immediately
8  PLAINTIFF would be left with no option but to seek the assistance of the Court. Weiss Decl. at
9  para. 4. Mr. Oliver reiterated he "can't say when [he] will get the money" necessary to satisfy
10 PLAINTIFF's claim and remove his boat. Weiss Decl. at para. 4.

11     In the light of these facts, PLAINTIFF became obliged to protect its interests by seeking
12 the assistance of this Honorable Court, by filing its Verified Complaint for Vessel Arrest,
13 Interlocutory Sale and for Money Damages for: (1) Trespass; (2) Fraud in the Inducement; (3)
14 Breach of Implied Maritime Contract; and (4) *Quantum Meruit*.

15     The DEFENDANT VESSEL, having been properly served with the Summons and
16 Complaint in this action, and no Answer or other response having been filed, and no Verified
17 Statement of Right or Interest (Admiralty Rule C(6)(a)(i)) having been filed, PLAINTIFF
18 requested Entry of Default, which the Clerk of this Honorable Court entered on December 19,
19 2007.

20     Maritime law indulges the legal fiction a vessel is a "person," and hence PLAINTIFF
21 is entitled to hold the Defendant Vessel liable *in rem* to satisfy maritime liens arising from
22 her tort of trespass. *See, e.g.*, Commercial Instruments and Federal Maritime Lien Act, 46
23 U.S.C. sections 31301, *et seq.*; The CHANCELLOR, 30 F.2d 227, 228-229 (2nd Cir. 1929)
24 (where barge was towed to a dock "and left there without permission" Court concluded "that the
25 CHANCELLOR was a trespasser); Diamond State Tel. Co. v. Atlantic Refining Co., 205 F.2d 402,
26 406 (3rd Cir. 1953) (though navigation aids not properly displayed "cable was [not] a trespasser in
27 the river'); New York Trap Rock Corp., Etc. v. Red Star Towing & Transp. Co., 172 F. Supp. 638,
28 644 (S.D.N.Y. 1959) (Court holding that where vessel owner moored her without permission and

damaged dock, dock owner entitled to damages and matter was properly within admiralty jurisdiction, noting "concept of trespass arising from the unauthorized use of property of another is to some extent recognized in admiralty); and In re Banks' Petition, 133 F. Supp. 276 (E.D.N.Y. 1955) (owner liable for dock damage by trespassing vessel).

Plaintiff according respectfully urges that this Honorable Court Order that the DEFENDANT VESSEL be sold as soon as possible at public auction by the United States Marshal, consistent with the mandates of the Supplemental Admiralty Rules.

## II.
## FEDERAL RULES OF CIVIL PROCEDURE
## PROVIDE FOR SALE OF THE *RES*

Rule (E)(9)(b) of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims governs interlocutory vessel sales:

> "If property that has been attached or arrested is perishable, or liable to deterioration, decay, or injury be detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is an unreasonable delay in securing the release of property, the Court, on application of a party or of the other person or organization having the warrant, may order the property or any portion thereof to be sold; and the proceeds, or so much thereof as shall be adequate to satisfy any judgment, may be ordered brought into the court to abide the event of the action; or the Court may, upon motion of the defendant or claimants, order delivery of the property to the defendant or claimant, upon the giving of security in accordance with these rules."

In order to prevail on a motion for interlocutory sale, the moving party need only show that one of these three conditions is met. Merchants National Bank of Mobile v. Dredge GENERAL G.L. GILLESPIE, 663 F.2d 1338, 1341 (5thCir. 1981). In the present case, a judicial sale of the Defendant Vessel is warranted because *all three* conditions specified in Rule E(9)(b) are fulfilled.

### A. **The Defendant Vessel Is Deteriorating In Condition And Value By Reason of Her Idleness While In Custody.**

Not surprisingly, Admiralty Courts have routinely found that prolonged idleness associated with the arrest of a vessel leads to physical deterioration, which justifies interlocutory sale of a defendant vessel. See, e.g., Silver Star Enterprises, Inc. v. M/V SARAMACCA, 19 F.3d 1008 (5th Cir. 1994) (excessive expense in keeping a vessel under

seizure and unreasonable delay in securing vessel release are independent and valid grounds for interlocutory sale); *see also*, United Stare vs. One Parcel of Real Property, 1989 LEXIS 95, 1989 W.L. 1086 (D. Oregon 1989). As is clear from the Declaration in Support of Appointment of Substitute Custodian on file herein, while in custody the DEFENDANT VESSEL's maintenance is necessarily limited -- the focus being simply on preservation from accident. Plaintiff complains that as the DEFENDANT VESSEL's machinery, equipment and general condition deteriorate, her value is commensurately decreasing. Because money does not decay, deteriorate or depreciated, the best way of the Court to preserve the value of the *res* is to convert it to money, by way of public auction.

The DEFENDANT VESSEL is a 36 year old 34 foot sailboat. Although a survey has not been performed, she is believed to be in only fair condition. Roberts Decl. at para. 4. A search of the Yachtword.com database (said to contain listings on over 118,000 vessels nationwide) for a 34-foot Hatteras motoryacht yielded but a single listing, with an asking price of $24,900.00 Weiss Decl. at para. 5. A true and correct copy of this listing is attached to the Declaration of Philip E. Weiss as Exhibit B. In contrast to the DEFENDANT VESSEL, the vessel listed at Yachtworld.com is said to be "pretty outside" with interior in "good" condition, with Chrysler 440 engines that reportedly run "real good." Weiss Decl. at para. 5. The DEFENDANT VESSEL is not believed to be operational, and has not been maintained in many months. It is therefore possible that sums derived at auction will be insufficient to cover the costs of suit and to satisfy PLAINTIFF's maritime lien arising from the DEFENDANT VESSEL's trespass. Every day she remains unused and in custody results in a diminution in the DEFENDANT VESSEL's condition and, accordingly, value. Her interlocutory sale is manifestly justified on this basis, and additionally and independently for the further reasons set forth below.

**B.    Failure By Defendants To Make Any Attempt**
    **To Secure The Release of the Defendant Vessel.**

Supplemental Admiralty Rules (E)(5)(a), E(5)(b) and E(9)(b) of the F.R.C.P. provide for the release of an arrested vessel on the giving of adequate security. Local Rule 72.1(e)

provides for the speedy hearing for a defendant who would have an arrested vessel released. In this case, no person or entity has posted or sought to post security for the release of the vessel, or requested a prompt hearing under Supplemental Admiralty Rule E(4)(f). Where, as here, no attempt whatever is made to release a vessel from arrest, District Courts have approved interlocutory vessel sales, based on a finding of "unreasonable delay [in] securing the release of the defendant vessel," as authorized by Supplemental Admiralty Rule E(9)(b). *See*, Ferris Financial Service, Co. v. O.S. ARCTIC PRODUCER, 567 F. Supp. 400 (W.D. Wash. 1983); *see also*, Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1341-42 (5th Cir. 1981) (affirming sale of boat based on vessel decay, unreasonable delay and excessive expense). In these circumstances therefore, an Order for interlocutory sale is surely proper and supportable both in logic and law.

### C. The Cost of Keeping the Defendant Vessel In Custody Is Excessive and Disproportionate.

Where, as here, no payments are made to creditors, the vessel is idle, and costs of custody are accruing, District Courts sitting in Admiralty have found the condition of "excessive cost" justifying an interlocutory sale of property. *See*, United States v. One Parcel of Real Property, 921 F.2d 170 (1990); *see also,* Ferris Financial Services Co. supra at 567 F. Supp. 400, 401 (cost of custody disproportionate to value of vessel constitutes "excessive cost" justifying interlocutory sale, particularly where [as here] no attempt made to release vessel"); *see also*, Silver Star Enterprises, supra. The Order Appointing Substitute Custodian in this case provides for payment to the Substitute Custodian based on the rates prevailing in the Port. The prevailing rate for custodial services in the Port of San Diego is believed to be not less than $12.50 per foot per month for wharfage and 50 cents per foot per day for custodial services (daily checks of the DEFENDANT VESSEL, including her mooring lines, orientation in the water and to confirm she has sustained obvious damage), plus $50.00 per week for more detailed vessel inspections, including such tasks as confirming that bilges do not have excessive water, checking that dewatering pumps (if equipped) remain sufficiently functional to pump out any accumulated water in the bilges, inspecting the interior for

POINTS AND AUTHORITIES IN SUPPORT MOTION FOR ORDER FOR
INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID

Page -7-
Case No. 07 CV 2015 DMS (WMc)

damage or other problems that should be brought to the parties' attention, and confirming shore power (if any) remains properly connected. The DEFENDANT VESSEL is 34-feet in length. Hence, apart from other additional custodial services (such as diving services, zinc replacement and the like), the custodial service fees for the DEFENDANT VESSEL accrue at a monthly rate of not less than $1,135.00 per month (*i.e.*, $12.50 X 34 = $425.00 (wharfage component) + .50 x 34 = $17.00/day x 30 = $510 (daily custodial component) + $50/week x 4 weeks = $200.

In the light of mounting custodial costs, the inevitable and unavoidable deteriorating condition of the DEFENDANT VESSEL while she is in custody, and the corresponding continuing erosion of her value, PLAINTIFF respectfully urges that it would be just and proper, and fully authorized and anticipated by Supplemental Admiralty Rules C and E, for this Honorable Court to grant PLAINTIFF's Motion requesting authority to sell the DEFENDANT VESSEL at public auction.

### III.
### CREDIT BID AUTHORIZATION

Local Admiralty Rule E.1(e)(2) provides that when a Court has determined a plaintiff has a valid claim senior in priority to all other "parties," such plaintiff with a valid security interest in the vessel may bid, without payment of cash, up to the total amount of the secured indebtedness, provided such plaintiff provides notice to all parties at least 10 days in advance of the date specified for sale of the defendant vessel. In the case at bar, no party apart from the PLAINTIFF has made any maritime lien claim to the DEFENDANT VESSEL. Hence, as it is the <u>only</u> maritime lien claimant, PLAINTIFF's claim is by definition senior to all other claims in this action. It is therefore respectfully urged that this Honorable Court authorize Plaintiff herein to credit bid an amount up to the lien amount specified in its Verified Complaint, plus its costs of suit, including Substitute Custodian fees (at the above specified rates) and other *custodia legis* expenses.

///

///

## IV.

## CONCLUSION

Because the DEFENDANT VESSEL lies idle in salt water, where she is subject to continuing deterioration within the meaning of Supplemental Admiralty Rule E(9)(b), because the potential monthly cost of her custody is disproportionate to her presumed, because PLAINTIFF is realizing a monthly erosion of its maritime security interest in the DEFENDANT VESSEL (which it rightfully maintains by operation of maritime law), because no party, entity or person has made any effort to post security or otherwise seek the release of the DEFENDANT VESSEL, because her value could potentially be exceeded by custodial expenses, because there continues to be an unreasonable delay in securing release of the DEFENDANT VESSEL, because the Court has a duty to preserve the value of the *res* for the protection of lien holders, and in the interest of fundamental justice PLAINTIFF respectfully urges this Honorable Court to grant its Motion for Interlocutory Vessel Sale and Authorization to Credit Bid.

Dated: March 25, 2008

Respectfully submitted,

WEISS & JONES

By   s/Philip E. Weiss
    Philip E. Weiss, Esq.
    Attorneys for Plaintiff
    Shelter Island Yachtways, Ltd.
    dba Shelter Island Boatyard
    E-mail: shiplaw@earthlink.net